UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LATANYA WILKERSON, | ] |
| o/b/o R.S.., | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 2:11-CV-2556-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction

The plaintiff, Latanya Wilkerson, on behalf of her son, R.S., appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Child's Supplemental Security Income ("SSI").  Ms. Wilkerson timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

R.S. was four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he was a preschooler. (Tr. at 17.) Ms. Wilkerson claims that her son became disabled on May 20, 2008, due to cerebral palsy. (Tr. at 17, 135.)

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a). The first step requires a determination of whether the child is "doing substantial gainful activity." *Id.* If he or she is, the child is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner will consider the child's physical or mental impairments to see if there is an impairment or combination of impairments that is "severe." *Id.* If the impairments are not severe, the analysis stops. *Id.* However, if the impairments are severe, the Commissioner will look to see if one of the impairments meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* If the child has such an impairment and it meets the durational requirement, the Commissioner will find that he or she is disabled. *Id.*

In step number three of the sequential evaluation, the ALJ initially evaluates the evidence and determines whether the child's severe impairment or combination of impairments found in step two meets or medically equals a listed impairment. If they do not meet the criteria for an impairment in the listings, the ALJ must decide

whether the impairment or combination of impairments "functionally equals" the severity of any listed impairment. *See* 20 C.F.R. § 416.924(d). When assessing functional limitations, the Commissioner considers all the relevant factors, such as how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures or supportive settings, how the child functions in school, and the effects of medications or other treatments on the child's health. 20 C.F.R. § 416.926a. To determine functional equivalence, the child's limitations must be evaluated in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i-vi). An impairment or combination of impairments functionally equals a listed impairment if it results in either "marked" limitations in two of the previously mentioned domains or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(a).

Applying this sequential evaluation, the ALJ found that R.S. has not engaged in substantial gainful activity since June 6, 2008. (Tr. at 17.) Based on the evidence presented, the ALJ concluded that his cerebral palsy and history of ear infections with tube placements are considered "severe" according to 20 C.F.R. § 416.924(c). *Id.*

Nonetheless, the ALJ determined that these impairments, when considered in combination, did not medically meet or equal the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In evaluating functional equivalence, the ALJ found that R.S. does not have an impairment or combination of impairments that meets or medically equals the listings in 20 CFR §§ 416.924(d) and 416.926a. *Id.* In the domain of health and physical well-being, the ALJ found a "marked limitation." (Tr. at 26.) In the domains of acquiring and using information and moving about and manipulating objects, the ALJ found a "less than marked limitation." (Tr. at 20-21, 23-24.) In the domains of attending and completing tasks, interacting and relating with others, and caring for himself, the ALJ found "no limitation." (Tr. at 21-25.) The ALJ concluded by finding that R.S. "has not been disabled, as defined in the Social Security Act, since June 6, 2008, the date the application was filed (20 C.F.R. § 416.924(a)." (Tr. at 26.)

II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.  Discussion

Plaintiff alleges that the ALJ's decision should be reversed or remanded because the ALJ improperly accorded minimal weight to the opinion of R.S.'s treating physician, Dr. Rosalyn Morgan. (Doc. 8 at 9-12.) In reviewing an ALJ's decision to discount the opinion of a treating physician, the Court considers whether the decision is supported by substantial evidence. *See Phillips v. Barnhart*, 357. F.3d 1232, 1240-41 (11th Cir. 2004). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). An ALJ is required to specify "what weight is given to a treating physician's opinion and any reason for giving it no weight." *Id.*; *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). An ALJ must have "good cause" to discount the opinion of a treating physician. *Phillips*, 357 F.3d at 1240; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. Furthermore, "[a] treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly

conclusory." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

Here, substantial evidence supports the ALJ's decision to discount Dr. Morgan's form assessment of R.S.'s limitations. (Tr. at 19-26.) On a form drafted by Plaintiff's counsel, Dr. Morgan completed an assessment in September 2008 indicating that R.S. had marked and extreme limitations. (Tr. at 19, 213-14.) In the domains of health and physical well-being, acquiring and using information, and attending and completing tasks, Dr. Morgan opined that R.S.'s limitations were "extreme." (Tr. at 213-14.) In the domains of interacting and relating to others, moving about and manipulating objects, and caring for self, Dr. Morgan noted that R.S.'s limitations were "marked." (Tr. at 214.). The ALJ considered all of the medical evidence contained in the record, including Dr. Morgan's form assessment, but gave that assessment minimal weight. (Tr. at 19-20.)

Although Dr. Morgan was one of R.S.'s treating pediatricians, the ALJ had good cause to discount her opinion. First, the form report completed by Dr. Morgan and submitted by Plaintiff's counsel consisted of a series of conclusory "check-offs" devoid of any objective medical findings. *Id.* As noted by the ALJ, "[f]orm reports, in which a medical source merely enters a series of check-offs without supplying any

supporting objective findings, are less than optimally useful in the disability determination process." (Tr. at 19.) Dr. Morgan failed to provide medical findings to support and qualify her opinion that R.S. suffered marked and extreme limitations. *Id.* In fact, Dr. Morgan did not provide any basis for her September 2008 assessment or during the relevant period after R.S.'s June 2008 application date. (Tr. at 19-20, 179-99, 230-35.) Dr. Morgan, instead, offered notations of either extreme or marked limitations in the six domains of functioning on a form submitted by Plaintiff's counsel. (Tr. at 19, 213-14.) The ALJ properly accorded little weight to Dr. Morgan's form assessment because it was conclusory and lacked objective medical evidence. *See Phillips*, 357 F.3d at 1240-41.

Additionally, Dr. Morgan's September 2008 form assessment was contradicted by her own pre and post-opinion medical findings. (Tr. at 19, 20, 179-99, 230-35.) On a patient progress sheet dated October 25, 2007—prior to R.S.'s application date—Dr. Morgan or her assistant listed "running, jumping, climbing, [and] talking in sentences" under R.S.'s development. (Tr. at 181.) On another patient progress sheet dated June 5, 2008, Dr. Morgan or her assistant did not provide any details regarding R.S.'s claimed disability or limited mobility. (Tr. at 180.) From October 2008 through November 2009—after Dr. Morgan completed the form

assessment—Dr. Morgan met with R.S. and treated him for childhood illnesses and sinusitis on six different occasions (Tr. at 20, 230-35.) During this period of claimed disability, Dr. Morgan does not provide any medical records of the marked and extreme limitations to support her September 2008 assessment. (Tr. at 19-20, 230-35.) Accordingly, based upon the inconsistencies in the objective medical evidence, the ALJ had good cause to give minimal weight to Dr. Morgan's September 2008 form assessment opinion.

Finally, the ALJ's decision to afford little weight to Dr. Morgan's form assessment was substantially supported by the weight of the record. In making his determination, the ALJ considered the examinations performed by Dr. Charles Law, and gave Dr. Law's opinion greater weight than Dr. Morgan's form assessment. (Tr. at 19-26, 202-04, 221-23.) In May 2008, Dr. Law noted no definitive abnormalities in an MRI of R.S.'s head, and described R.S.'s development as "on time." (Tr. at 19, 203.) Dr. Law found that R.S.'s cerebral palsy was "very mild," and recommended casting, botox, and physical therapy as treatment. *Id.* In January 2009, Dr. Law noted that R.S. was "an alert, happy little boy" and "[i]ntellectually, he appears to be on track." (Tr. at 221.) Dr. Law injected R.S. with botox and placed him in an intensive physical therapy program. *Id.* A follow-up was planned for six months later; however,

the record does not indicate whether or not Dr. Law treated R.S. again. However, the ALJ reviewed the available physical therapy records, which showed improvement in toe pattern, balance, and ambulation as well as age-appropriate motor skills for R.S. (Tr. at 19, 215-20, 237-39.) The ALJ's decision is further supported by R.S.'s high scores on tests of motor skills, cognition, language, and behavior after Dr. Law's treatment and physical therapy. (Tr. at 19-20, 263-97.)

Other medical records and evidence contained in the record further support the ALJ's decision to give Dr. Morgan's assessment little weight. Dr. Doris Phillips, a state agency medical consultant, found a marked limitation in the health and physical well-being domain, a less-than-marked limitation in the moving about and manipulating objects domain, and no limitation in the other four domains. (Tr. at 205-10.) Dr. Phillips concluded that R.S.'s impairments were severe, but do not meet, medically equal, or functionally equal the listings. (Tr. at 205.) The ALJ's decision, along with the opinions of Dr. Law and Dr. Phillips, are also reinforced by the findings of V. Harper, a speech and language specialist, who found no impairment with R.S.'s language or speech. (Tr. at 211.)

The ALJ's decision is further supported by the record of R.S.'s daily activities. (Tr. at 19, 121-30.) In a function report completed by Ms. Wilkerson, she specifically

listed that R.S. could ride a bicycle/tricycle, play games like tag and hide-and-seek, and feed himself. *Id.* Although Ms. Wilkerson testified that R.S. had some limitations, she admitted that R.S. doodled, played computer games, and ran, despite his inability to keep up with other children. (Tr. at 18-19, 39-54.) R.S. corroborated Ms. Wilkerson's testimony when he stated at the hearing that he played basketball, watched television, played tag, and had a best friend. (Tr. at 19, 24, 37-39) The hearing testimony contradicts R.S.'s claims of disability and Dr. Morgan's opinion of extreme and marked limitations. Based upon the hearing testimony regarding R.S.'s activities, the ALJ had good cause to accord little weight to Dr. Morgan's form assessment. *See Crawford*, 636 F.3d at 1159. Based upon the medical and hearing evidence, the ALJ had good cause to give minimal weight to Dr. Morgan.

  Plaintiff's counsel argues that the ALJ should have at least awarded benefits for a closed period of disability from June 6, 2008, to August of 2009. (Doc. 8 at 9.) However, the weight of the record supports the ALJ's finding that R.S. "has not been disabled, as defined in the Social Security Act, since June 6, 2008, the date the application was filed." (Tr. at 26.) As mentioned above, the ALJ properly considered the hearing testimony and the medical records from R.S.'s treating physicians before

and after the period of claimed disability. Therefore, the findings of the ALJ are supported by substantial evidence in the record. *See Wilson*, 284 F.2d at 1221.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Plaintiffs' arguments, the Court finds that the ALJ had good cause to disregard Dr. Morgan's opinion. The Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 16th day of July 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458